FILED

12/27/2016

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 15-0428

DA 15-0428

IN THE SUPREME COURT OF THE STATE OF MONTANA

2016 MT 346

STATE OF MONTANA,

        Plaintiff and Appellee,

v.

WILLIAM JAMES LAWRENCE,

        Defendant and Appellant.

APPEAL FROM:    District Court of the First Judicial District,
In and For the County of Lewis and Clark, Cause No. ADC 14-147
Honorable Mike Menahan, Presiding Judge

COUNSEL OF RECORD:

        For Appellant:

            Chad Wright, Chief Appellate Defender, Alexander H. Pyle, Assistant
Appellate Defender, Helena, Montana

        For Appellee:

            Timothy C. Fox, Montana Attorney General, Sarah Clerget, Assistant
Attorney General, Helena, Montana

            Leo Gallagher, Lewis and Clark County Attorney, Lisa Leckie, Deputy
County Attorney, Helena, Montana

                Submitted on Briefs:  October 26, 2016

                        Decided:  December 27, 2016

Filed:

_____

                        Clerk

Justice Patricia Cotter delivered the Opinion of the Court.

¶1 William Lawrence appeals from his conviction for felony theft following a jury trial in the First Judicial District Court, Lewis and Clark County. Lawrence raises allegations of prosecutorial misconduct, ineffective assistance of counsel, and an abuse of discretion by the District Court. We reverse and remand for a new trial.

## ISSUE

¶2 Lawrence raises four issues on appeal. We restate the dispositive issue as follows:

*Whether the prosecutor's comments during closing arguments require reversal under the plain error doctrine?*

## FACTUAL AND PROCEDURAL BACKGROUND

¶3 On April 8, 2014, Lawrence and his brother, Steven Dubois, arrived at Wayne Miller Coins on Last Chance Gulch in Helena, Montana. Lawrence and Dubois entered the shop after being buzzed in through the back door. Lawrence was in possession of coins he wished to have appraised, something he had done previously at Miller Coins. After Wayne Miller, the owner of the shop, informed him that his coins were valueless, Lawrence perused the store while questioning a store employee, Emily Gleason, about some of the items. Meanwhile, Dubois made his way to the back door, apparently intent on leaving the store. While following his brother out of the shop, Lawrence stopped to admire artwork adorning the walls of the hallway. As Lawrence continued to look at the artwork, Dubois grabbed a shipping package containing roughly $10,500 in silver, one-ounce coins and exited the store. Lawrence then started toward the back door. Gleason saw Dubois take the package and hurried to the back of the store to confront

2

Lawrence.  After a brief exchange, Lawrence left and got in a car with Dubois, who drove away.  Lawrence was apprehended the next day in possession of a backpack containing nearly half of the stolen silver coins.

¶4     Lawrence was charged with theft under § 45-6-301(1)(a), MCA.  A two-day trial was held in the First Judicial District Court, Lewis and Clark County.  During closing argument, the prosecutor told the jury, "The presumption of innocence that you came into this trial with no longer exists at this point."  Defense counsel did not object.  Subsequently, the jury found Lawrence guilty of felony theft and he was sentenced to ten years in prison.

¶5     On appeal, Lawrence raises a myriad of arguments, alleging that the prosecutor committed plain error requiring reversal by stripping Lawrence of the presumption of innocence as well as misstating the law of the charged offense.  Further, Lawrence argues that the District Court abused its discretion by not granting a mistrial after the State violated an order in limine, and that defense counsel provided ineffective assistance by failing to object to prosecutorial misconduct, an erroneous jury instruction, and hearsay testimony by a witness for the State.

**STANDARD OF REVIEW**

¶6     In general, this Court does not address issues of "'prosecutorial misconduct pertaining to a prosecutor's statements not objected to at trial.'"  *State v. Aker*, 2013 MT 253, ¶ 21, 371 Mont. 491, 310 P.3d 506 (quoting *State v. Longfellow*, 2008 MT 343, ¶ 24, 346 Mont. 286, 194 P.3d 694).  However, we may exercise our discretion and review such issues under the plain error doctrine.  *Aker*, ¶ 21 (citing *State v. Lacey*, 2012 MT 52,

3

¶ 14, 364 Mont. 291, 272 P.3d 1288); *State v. Hayden*, 2008 MT 274, ¶ 17, 345 Mont. 252, 190 P.3d 1091. The plain error doctrine is to be used sparingly, and only on a case-by-case basis. *Hayden*, ¶ 17. Once the doctrine is invoked, this Court's review is grounded in our "inherent duty to interpret the constitution and to protect individual rights set forth in the constitution." *State v. Finley*, 276 Mont. 126, 134, 915 P.2d 208, 213 (1996) *overruled on other grounds State v. Gallagher*, 2001 MT 39, ¶ 21, 304 Mont. 215, 19 P.3d 817.

## DISCUSSION

¶7 We do not reach the issues regarding the order in limine, the alleged hearsay, or the jury instruction, nor do we reach the question of whether defense counsel's failure to object to the prosecutor's statement constitutes ineffective assistance of counsel. Pertinent here, Lawrence argues the prosecutor's statement regarding the presumption of innocence constitutes plain error requiring reversal and remand for a new trial.

¶8 *Whether the prosecutor's comments during closing arguments require reversal under the plain error doctrine?*

¶9 The purpose of the plain error doctrine is to correct an error not objected to at trial that affects the "fairness, integrity, and public reputation of judicial proceedings." *Finley*, 276 Mont. at 134, 915 P.2d at 213. The plain error doctrine may be used "'in situations that implicate a defendant's fundamental constitutional rights,'" and where "'failing to review the alleged error may result in a manifest miscarriage of justice, leave unsettled the question of the fundamental fairness of the proceedings, or compromise the integrity of the judicial process.'" *Aker*, ¶ 21 (quoting *State v. McDonald*, 2013 MT 97, ¶ 8, 369

4

Mont. 483, 299 P.3d 799). Therefore, we first determine whether the defendant's fundamental constitutional rights have been implicated.

¶10 The underlying question here is a simple one: whether a prosecutor stating during closing argument that the presumption of innocence has been removed from the defendant implicates a defendant's fundamental rights. We cannot overstate the importance of the foundational principle that is the presumption of innocence. It is a bedrock, axiomatic, and elementary tenet of our criminal justice system. *State v. Williams*, 184 Mont. 111, 112, 601 P.2d 1194, 1195 (1979). Further, enforcement of this principle, meaning its application to each and every criminal defendant, "lies at the foundation of the administration of our criminal law." *Coffin v. United States*, 156 U.S. 432, 453, 15 S. Ct. 394, 403 (1895). Therefore, we determine that the comment by the prosecutor stating the presumption of innocence no longer applied to the defendant implicated the defendant's fundamental rights. We next determine whether a failure to review this alleged error might result in a "'manifest miscarriage of justice, leave unsettled the question of the fundamental fairness of the proceedings, or compromise the integrity of the judicial process.'" *Aker*, ¶ 21 (quoting *McDonald*, ¶ 8).

¶11 This Court has, on numerous occasions, refused to invoke the plain error doctrine because the alleged error did not result in a miscarriage of justice, raise a question as to the fundamental fairness of the proceedings, or compromise the integrity of the judicial process. *See, e.g., McDonald*, ¶ 17 (concluding that the challenged comment in closing argument did not raise the specter of prosecutorial misconduct necessitating the exercise of plain error review to protect the fundamental fairness of the proceeding); *State v.*

*Thorp*, 2010 MT 92, ¶¶ 25-30, 356 Mont. 150, 231 P.3d 1096 (determining that a cautionary instruction was sufficient under the circumstances to remedy any alleged infringement on the defendant's constitutional right to a fair trial). However, we have also previously determined that prosecutorial misconduct may warrant relief under the plain error doctrine.[1]

¶12 This Court has not previously been faced with comments such as those at issue in this case. Due to the gravity of the presumption of innocence within our criminal justice system, we determine that the challenged comment, "[t]he presumption of innocence that you came into this trial with no longer exists at this point," leaves unsettled the question of whether or not the proceedings were fundamentally fair and compromises the integrity of the judicial process. Therefore, as we find that the circumstances of the instant case warrant application of the plain error doctrine, we proceed to address the merits of the alleged error.

¶13 "Both the Sixth Amendment to the United States Constitution and Article II, Section 24 of the Montana Constitution guarantee criminal defendants 'the right to a fair trial by a jury.'" *Aker*, ¶ 24 (quoting *Hayden*, ¶ 27). Prosecutorial misconduct "may be grounds for reversing a conviction and granting a new trial if the conduct deprives the

---

[1] In *State v. Hayden*, we reversed and remanded for a new trial based on the prosecutor's comments. *Hayden*, ¶¶ 30-33. In *Hayden*, the prosecutor's challenged statements included, in part, offering his own opinion as to witness testimony during closing argument, stating that the jury could rely on the detective's testimony, and improperly testifying to the efficacy of the search during closing argument. *Hayden*, ¶ 32. In summary, we determined that the prosecutor's comments unfairly added "the probative force of his own personal, professional, and official influence to the testimony of the witnesses," and that the prosecutor's conduct invaded the role of the jury. *Hayden*, ¶ 33. In light of these two concerns, we determined that the record left "unsettled the question of the fundamental fairness of the proceedings." *Hayden*, ¶ 33.

defendant of a fair and impartial trial." *Hayden*, ¶ 27. It is well established that we "'consider alleged improper statements during closing argument in the context of the entire argument.'" *Aker*, ¶ 24 (quoting *State v. Makarchuk*, 2009 MT 82, ¶ 24, 349 Mont. 507, 204 P.3d 1213). We "do not presume prejudice from the alleged prosecutorial misconduct; rather, the 'defendant must show that the argument violated his substantial rights.'" *Aker*, ¶ 24 (quoting *McDonald*, ¶ 10).

¶14 Therefore, we must determine whether the challenged comment deprived the defendant of a fair and impartial trial. In making this determination, we consider the challenged comment in the context of the trial and the closing argument as a whole. Further, we consider whether the challenged comment violated the defendant's substantial rights.

¶15 As stated above, there are few principles in our criminal justice system as fundamental as the presumption of innocence. The principle is so foundational that we have recognized "it cannot be evidence, nor can it be introduced in the case, for it is in the case from its inception." *State v. De Lea*, 36 Mont. 531, 539, 93 P. 814, 817 (1908). The presumption of innocence is the "safeguard which the law casts around all persons accused of a crime, and the defendant cannot be reached by a verdict of guilty until this safeguard is entirely removed." *De Lea*, 36 Mont. at 539, 93 P. at 817. Further, and most importantly in the instant case, the presumption endures throughout the deliberations of the jury and may only be overcome "by evidence which satisfies the minds of the jurors beyond a reasonable doubt." *De Lea*, 36 Mont. at 539, 93 P. at 817. The presumption remains attached to the defendant as he or she appears in the minds of the jurors after the

jury has heard the entirety of the evidence and begun its deliberation. Indeed, it is improper to say that the presumption may be removed from a defendant at any time; rather, the presumption is overcome upon his or her conviction in a court of law.

¶16 In our criminal justice system, the presumption has been overcome when the State has presented evidence against a criminal defendant that satisfies a jury, beyond a reasonable doubt, that the defendant is guilty of the crime charged. *De Lea*, 36 Mont. at 540, 93 P. at 817-18. To that end, we instruct the jurors that they are to refrain from making their decision as to the guilt or innocence of a defendant until they have considered whether the State has overcome the presumption of innocence beyond a reasonable doubt. The prosecutor's statement made prior to deliberation of the jury that the presumption of innocence no longer attached violated this bedrock principle of law.

¶17 It is reasonable and required that both the State and defense counsel jealously guard this principle throughout the entirety of a criminal trial. It is clear from the record that defense counsel failed to object to the challenged statement, yet that does not relieve a prosecutor of his or her duty. The United States Supreme Court has stated that "it is as much [the Prosecutor's] duty to refrain from improper methods calculated to produce a wrongful conviction as it is to use every legitimate means to bring about a just one." *Berger v. United States*, 295 U.S. 78, 88, 55 S. Ct. 629, 633 (1935). We agree. By stating that the presumption of innocence no longer applied to the defendant, the prosecutor improperly abdicated this duty and deprived the defendant of his fundamental right to a fair and impartial trial by jury as guaranteed by Article II, Section 24, of the Montana Constitution, and the Sixth Amendment to the United States Constitution.

8

¶18    Here, it was Dubois, not Lawrence, who physically removed the coins from the store. Lawrence testified on his own behalf, telling the jurors that he did not want to keep the coins his brother had given him and intended to give them back to the coin shop, hopefully without exposing himself to prosecution. However, he was arrested before he could do so. While the jury was free to disbelieve this testimony, the fact remains that under these circumstances, the presumption of innocence was critical to Lawrence's defense. When the prosecutor told the jury the presumption of innocence no longer existed and his lawyer raised no objection or argument in opposition to that assertion, the jury could well have concluded that the prosecutor was correct.

¶19    Viewing the challenged comment in the context of the surrounding statement provides support for our conclusion that the prosecutor engaged in misconduct requiring relief. In full, the prosecutor stated, "The presumption of innocence that you came into this trial with no longer exists at this point. The instruction doesn't say that you have to believe what the defendant told you. You can use your common sense in determining what happened in this case." We infer that the instruction to which the prosecutor refers is Instruction No. 4 which states, in relevant part:

> The Defendant is presumed to be innocent of the charge against him. This presumption remains with him throughout every stage of the trial and during your deliberations on the verdict. It is not overcome unless from all the evidence in the case you are convinced beyond a reasonable doubt that the Defendant is guilty. The Defendant is not required to prove his innocence or present any evidence.

This preliminary instruction was given by the district court at the commencement of the trial, but was not read again at the conclusion of the evidence.

9

¶20 The prosecutor is the representative of the State at trial and must be held to a standard commensurate with his or her position. Noting this, the United States Supreme Court has rightly observed that a prosecutor's improper suggestions and assertions to a jury "are apt to carry much weight against the accused when they should properly carry none." *Berger*, 295 U.S. at 88, 55 S. Ct. at 633. We conclude that these statements could cause a reasonable juror to question the language of the preliminary jury instruction and, therefore, have the potential effect of removing the presumption of innocence from the defendant.

¶21 Our conclusion here finds support in a Tenth Circuit case in which a similar representation was made by a prosecutor during closing arguments to a jury. In *Mahorney v. Wallman*, 917 F.2d 469 (10th Cir. 1990), the Court of Appeals held that a prosecutor's argument that the presumption of innocence had been removed from the defendant violated the defendant's constitutional rights and constituted reversible error. *Mahorney*, 917 F.2d at 473-74. We conclude that the same result must be reached here.

¶22 It is our "inherent to duty . . . to protect individual rights set forth in the constitution." *Finley*, 276 Mont. at 134, 915 P.2d at 213. We therefore decline to accept the State's contention and the Dissent's assertion that the prosecutor's statements were appropriate comments on the evidence undeserving of plain error review. Dissent, ¶ 37. Rather, we conclude that the challenged comments made by the prosecutor constitute prosecutorial misconduct from which the defendant is entitled to relief.

CONCLUSION

¶23    We determine that the prosecutor's comments require reversal of Lawrence's conviction.  Because we grant relief based on prosecutorial misconduct during closing arguments, we do not reach the merits of the additional issues raised by Lawrence on appeal.  We reverse and remand for a new trial.


/S/ PATRICIA COTTER


We Concur:

/S/ MICHAEL E WHEAT
/S/ LAURIE McKINNON
/S/ JAMES JEREMIAH SHEA


Justice Beth Baker, concurring.

¶24    I agree with the Court's determination to review for plain error the prosecutor's statement regarding the presumption of innocence because that statement implicated Lawrence's fundamental rights.  The statement was improper and objectionable.  But I share the Dissent's view that, when reviewed in context, the prosecutor's closing argument does not justify reversing the conviction.

¶25    The Court's reliance on *Mahorney* is misplaced.  *Mahorney* is distinguishable because in that case "defense counsel vigorously objected both during voir dire and closing argument to the prosecutor's misconduct and was immediately and categorically overruled in the presence of the jury." *Mahorney*, 917 F.2d at 473.  In reversing for a new trial, the Tenth Circuit concluded that the trial court placed an "official imprimatur

. . . upon the prosecution's misstatements of law [which] obviously amplified their potential prejudicial effect on the jury." *Mahorney*, 917 F.2d at 473. "Moreover," the Tenth Circuit went on, "the trial court did not thereafter attempt to cure or minimize the problem through admonishment or special instruction of the jury." *Mahorney*, 917 F.2d at 473. Thus, the Tenth Circuit concluded, "the factors that have permitted some courts to overlook similar prosecutorial misrepresentations are not present in this case." *Mahorney*, 917 F.2d at 474.

¶26 The Court also fails to consider the State's "alleged improper statements during closing argument in the context of the entire argument." *State v. Makarchuk*, 2009 MT 82, ¶ 24, 349 Mont. 507, 204 P.3d 1213. As the Dissent observes, the prosecutor focused on the evidence presented at trial. In her rebuttal argument the prosecutor stated:

> The State of Montana has the burden of proving the guilt of the defendant beyond a reasonable doubt. And the State accepts that burden; I think it's fair. It says: Proof beyond a reasonable doubt is proof of such convincing character that a reasonable person would rely and act upon that in the most important of his or her own affairs.

She then proceeded to explain reasonable doubt and to discuss the evidence and inferences the jury properly should draw from it in order to reach a guilty verdict. I would not reverse the conviction on the basis of the prosecutor's single "presumption of innocence" comment.

¶27 Despite my disagreement with the Court's analysis, I join the decision to reverse Lawrence's conviction because I am convinced that this is the rare case in which the cumulative effect of the errors he has shown on appeal prejudiced his right to a fair trial.

¶28     Lawrence asserts the following additional errors:  the prosecutor's misstatement of the law of the charged offense; defense counsel's failure to object to the prosecutor's closing argument; defense counsel's failure to object to an erroneous mens rea instruction; and defense counsel's failure to object to hearsay testimony.   I would conclude that, when considered as a whole, these errors prejudiced Lawrence's right to a fair trial.[1]

¶29     The cumulative error doctrine "refers to a number of errors that, taken together, prejudice a defendant's right to a fair trial."  *State v. Novak*, 2005 MT 294, ¶ 35, 329 Mont. 309, 124 P.3d 182; *accord State v. Giddings*, 2009 MT 61, ¶ 100, 349 Mont. 347, 208 P.3d 363; *State v. Bar-Jonah*, 2004 MT 344, ¶ 108, 324 Mont. 278, 102 P.3d 1229. Under the doctrine, "[r]eversal is required . . . once such accumulated errors are identified as having prejudiced a defendant's right to a fair trial."  *Novak*, ¶ 35.  It is the defendant's duty to prove the existence of prejudice.  *Novak*, ¶ 35.

¶30     In evaluating a cumulative error argument based on several enumerated errors, courts

> must consider each such claim against the background of the case as a whole, paying particular weight to factors such as the nature and number of the errors committed; their interrelationship, if any, and combined effect; how the district court dealt with the errors as they arose . . . ; and the strength of the government's case.   The run of the trial may also be important; a handful of miscues, in combination, may often pack a greater punch in a short trial than in a much longer trial.

---

[1]  I do not include in this list Lawrence's argument regarding a witness's passing reference to "booking photos."

*United States v. Sepulveda*, 15 F.3d 1161, 1196 (1st Cir. 1993) (internal citations omitted).

¶31 Here, over the course of a two-day trial, there were several interrelated errors that had the combined effect of prejudicing Lawrence's right to a fair trial. During closing argument, the prosecutor implied that because Lawrence had not returned the coins "immediately," he had committed theft under § 45-6-301(1)(a), MCA. Though made in response to the defense closing argument, this misstated the law, which requires a purpose to deprive the owner of his property. The error, which otherwise could have been a minor one, was compounded by the District Court's instructions as to the mens rea for theft. The court gave a result-based "knowingly" instruction and a conduct-based "purposely" instruction. This was not a correct statement of the law. Theft is a result-based crime because it requires a "purpose to deprive" the owner of property. *See State v. Shively*, 2009 MT 252, ¶¶ 17-18, 351 Mont. 513, 216 P.3d 732 (concluding that the State is not required to prove that a defendant knows the property is stolen to be convicted under § 45-6-301, MCA, because the statute requires a knowing exertion of control over the property with the purpose to deprive the owner). Even though the court informed the jury of that element, it didn't correctly define for the jury what "purpose" meant in proving the elements of theft.

¶32 During the trial Officer Zapata testified that another officer advised him that Lawrence "was possibly in Stewart Homes trying to sell stolen coins from the theft." The officer's hearsay testimony was the only evidence about any intent Lawrence may have had to sell the stolen property. Defense counsel did not object. Certainly, there is

14

nothing constitutionally impermissible about the admission of hearsay evidence. Nor is there a mandate for counsel to raise every objection that might have merit. But the State has not argued that any hearsay exception applied, and an objection surely would have been sustained. It was an important piece of evidence, particularly in light of the defense theory—that Lawrence had not acted with the purpose of depriving the owner of the coins. Lawrence was arrested less than two days after the theft occurred. He claimed at trial that he helped Dubois remove the stolen coins from the home of an acquaintance because there were children present. He testified that he was trying to figure out a way to get the coins back to Wayne Miller's shop without incident because he knew and respected Miller's wife, who runs a homeless shelter in Helena. This perhaps sounds like an implausible story. And a jury would be free to reject his testimony. But that assumes a trial safeguarded by the protections of the Constitution, including the effective assistance of counsel, instructions that correctly state the applicable law, and the full protection of the presumption of innocence.

¶33 Had any of the claimed mistakes been isolated in an otherwise error-free trial, none would justify reversal. But cumulatively, they resulted in a trial in which inadmissible evidence was the only proof of an element of the offense on which the jury was improperly instructed and which the prosecutor misstated in argument, along with her unartful short-circuiting of the presumption of innocence. There was no plausible strategic reason for counsel's failure to seek exclusion of harmful evidence or to propose a correct instruction on mental state when it was a key theory of the defense. *See State v. Kougl*, 2004 MT 243, ¶ 20, 323 Mont. 6, 97 P.3d 1095 (concluding that defendant was

given ineffective assistance of counsel, in part, because counsel "failed to use the law to strike at the heart of the State's case"). Lawrence has, in my view, sustained his burden to show that the combination of miscues in his brief trial prejudiced his right to a fair shake. I agree with the decision to give him a new trial.

/S/ BETH BAKER

Chief Justice Mike McGrath, dissenting.

¶34 The statement referenced by the majority was made as part of a closing argument, the summation made by the attorneys following the conclusion of the presentation of evidence to the jury. The statement was made at the end of that closing argument, following her summation of all the evidence submitted.

¶35 Taken in context of the entire proceeding, it is clear that the prosecution was not suggesting that the defendant was not entitled to the presumption of innocence, but rather making the argument that the evidence she had just summarized would overcome that presumption of innocence.

¶36 The jurors were properly instructed by the District Court Judge. Instruction No. 4 provided:

> The Defendant is presumed to be innocent of the charge against him. This presumption remains with him throughout every stage of the trial and during your deliberations on the verdict. It is not overcome unless from all the evidence in the case you are convinced beyond a reasonable doubt that the Defendant is guilty. The Defendant is not required to prove his innocence or present any evidence.

Significantly, Instruction No. 2 provided:

16

You should take the law in this case from my instructions alone. You should not accept anyone else's version as to what the law is in this case. You should not decide this case contrary to these instructions, even though you might believe the law ought to be otherwise. Counsel, however, may comment and argue to the jury upon the law as given in these instructions.

¶37 Instructions are not only read aloud by the judge, but they are provided to the jury in writing to be taken into deliberations for the purpose of review by the jurors. They clearly provide that jurors should take the law from the instructions alone, and not accept other versions of what the law is. The prosecutor's closing statement here was a comment on the evidence presented and not intended to counter the law as it was clearly given in the District Court instructions.

¶38 As the majority notes, the plain error doctrine should be used sparingly, and only in cases where the alleged error may "result in a manifest miscarriage of justice, leave unsettled the question of the fundamental fairness of the proceeding, or compromise the integrity of the judicial process." *McDonald*, ¶ 8. Viewed in context of the entire trial,[1] particularly the instructions, this comment made by the prosecutor at the end of the closing argument, after summarizing the evidence presented to the jury, does not meet the standard required to invoke plain error review.

¶39 Closing argument is a unique portion of a trial. It is an opportunity for the attorneys to present the case as they see it. And by its very nature, it is argument—not evidence. Jurors understand the function of argument. The lawyers in the case

---

[1] The prosecutor also made it clear in her final closing argument that the State has the burden of proving the charges beyond a reasonable doubt, and that they readily accept that challenge.

understand the function of closing argument and objecting in a closing argument is seldom necessary.

¶40   For the reasons stated above, I dissent.

/S/ MIKE McGRATH

Justice Jim Rice joins the Dissent of Chief Justice Mike McGrath.

/S/ JIM RICE